UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IRONWORKS PATENTS, LLC, | Case No. |
| Plaintiff, | |
| v. | COMPLAINT FOR PATENT INFRINGEMENT AND JURY TRIAL DEMANDED |
| HUAWEI TECHNOLOGIES CO. LTD., HUAWEI DEVICE USA, AND HUAWEI TECHNOLOGIES USA INC., | |
| Defendants. | |

## COMPLAINT

This is an action for patent infringement arising under the patent laws of the United States, Title

35 of the United States Code, against Defendants Huawei Technologies Co. Ltd., Huawei Device

USA, Defendant Huawei Technologies USA Inc. (collectively "Huawei") that relates to five U.S.

patents owned by Ironworks Patents, LLC ("Ironworks"): 6,006,114; 6,002,390; 5,915,239;

9,521,269 and RE39,231 (collectively, the "Patents-in-Suit").

### PARTIES

1.      Plaintiff Ironworks is a limited liability company organized under the laws of the

State of Illinois, with an office at 125 S. Clark St., 17th Floor, Chicago, Illinois 60603.

2.      Defendant Huawei Technologies Co. Ltd. is a corporation duly organized and

existing under the laws of the People's Republic of China, with its principal place of business at

Banxuegang Industrial Park, Buji Longgang, Shenzhen 518129, China.  On information and

belief, Huawei Technologies Co. Ltd. can be served with process at that address.

3.      Defendant Huawei Device USA is a corporation duly organized and existing under the laws of Texas, with a place of business at 5700 Tennyson Parkway, Suite 500, Plano, TX 75024.  Huawei Device USA can be served with process through its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

4.      Defendant Huawei Technologies USA Inc. is a Texas corporation duly organized and existing under the laws of Texas, with a place of business at 5700 Tennyson Parkway, Suite 500, Plano, TX 75024.  Huawei Technologies USA Inc. can be served with process through its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

5.      Huawei makes, uses, imports, sells and offers for sale wireless mobile devices including smartphones, tablets, smart watches, and related applications and services.

6.      Huawei is ranked by independent industry analysts as the third-largest supplier of mobile devices worldwide.

## JURISDICTION AND VENUE

7.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., and more particularly 35 U.S.C. § 271.

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      Huawei is subject to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, due at least to its substantial business conducted in this District, including: (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products

and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District, and (iii) having committed the complained of tortious acts in Texas and in this District.  Huawei, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website, http://www.huawei.com, as well as other retailers) its products and/or services in the United States, the State of Texas, and the Eastern District of Texas. Huawei, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas. Huawei has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

10.     Defendants Huawei Device USA and Huawei Technologies USA Inc. are Texas corporations and are headquartered in this District in Plano, Texas. This Court's exercise of personal jurisdiction over Huawei is consistent with the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under 28 U.S.C. §1400(b).  Defendants Huawei Device USA and Huawei Technologies USA Inc. both reside in the District because they are both incorporated in Texas pursuant to 28 U.S.C. § 1391(d).  They have both committed acts of infringement in this District. They both have regular and established paces of business in this including at least 5700 Tennyson Parkway, Suite 500, Plano, TX 75024.

12.     Venue is proper as to Defendant Huawei Technologies Co. Ltd., which is organized under the laws of China.  28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

## BACKGROUND FACTS REGARDING THE IRONWORKS PATENTS

13.     Ironworks is the owner of record and assignee of each of U.S. Patent Nos. 6,006,114 ("the '114 Patent"); 6,002,390 ("the '390 Patent"); 5,915,239 ("the '239 Patent"); 9,521,269 ("the '269 Patent") and RE39,231 (collectively the "Patents-in-Suit").

14.     The '390 Patent and RE39,231 were originally filed by, and assigned to, Sony Corporation ("Sony").

15.     Sony, based in Japan, is one of the world's largest consumer electronics and entertainment companies.

16.     Sony spends a significant amount of revenue on research and development.  For example, Sony Corporation spent over $4 billion on research and development in each year from 2012 -2016 (e.g. 468,183 million yen in 2016).

17.     Sony's long history of innovation has resulted in the company being awarded more than 3,200 patents.

18.     The '114 Patent and the '239 Patent were originally filed by, and assigned to, Nokia Mobile Phones Ltd. ("Nokia"). The '269 Patent is a continuation of a continuation application filed by Nokia.

19.     Nokia is a Finnish multinational communications and information technology company, and at one time was the world's largest producer of mobile phones.

20.     For example, the world's first mobile phone satellite call was made on a Nokia phone.

21.     For more than 20 years, Nokia has defined many of the fundamental technologies used in virtually all mobile devices and taken a leadership role in standards setting. As a result, Nokia owns a leading share of essential patents for GSM, 3G radio and 4G LTE technologies. These, together with other Nokia patents for Wi-Fi and video standards, form the core of Nokia's patent portfolio.

22.     Nokia spends a significant amount of revenue on research and development.  For example, Nokia spent about 4.9 billion Euros R&D investment in 2011 and 2016.   Between 1984 and 2014, Nokia has invested more than 50 billion Euros to create a portfolio of 30,000 patents and patent applications.

23.     Nokia's long history of innovation has resulted in the company being awarded more than 30,000 patents in more than 10,000 patent families.

## THE PATENTS-IN-SUIT AND CLAIMS-IN-SUIT

24.      Ironworks has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patents-in-Suit during all relevant time periods.

25.     On December 21, 1999, the '114 Patent entitled "Radiotelephone enabling adjustment of alerting indicator volume/level during incoming calls" was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

26.     On December 14, 1999, the '390 Patent entitled "Text input device and method" was duly and legally issued by the USPTO.

27.     On June 22, 1999, the '239 Patent entitled "Voice-controlled telecommunication terminal" was duly and legally issued by the USPTO.

28.     On December 13, 2016, the '269 Patent entitled "Method of giving the user information and portable device" was duly and legally issued by the USPTO.

29.     On August 8, 2006 U.S. Patent No. RE39,231 entitled "Communication terminal equipment and call incoming control method" was duly and legally issued by the USPTO.

## HUAWEI'S INFRINGING PRODUCTS

30.     Huawei has been, and now is, directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in the United States that include the systems claimed in the Patents-in-Suit and/or by using the methods claimed in the Patents-in-Suit, including, for example, Huawei's use of said methods during set-up, testing, and demonstration of its smartphones and tablets.

31.     Huawei has been and now is inducing the direct infringement of method claims of the Patents-in-Suit pursuant to U.S.C. § 271(b) at least by one or more of making, using, offering for sale, selling and/or importing the below accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in the United States that were designed and intended to use and/or practice the methods and processes covered by the Patents-in-Suit. Further, Huawei has induced infringement by, for example, providing user guides and other support materials and services to its users and by advertising features that are used, and benefits that are achieved through use of the Patents-in-Suit.

32.     Despite Huawei's awareness of the Patents-in-Suit, Huawei has continued these acts of inducement with specific intent to cause and encourage direct infringement of the Patents-in-Suit with willful blindness that such activities occurred, are still occurring, and constitute direct infringement of the Patents-in-Suit.

**HUAWEI'S KNOWLEDGE OF THE PATENTS-IN-SUIT,
HOW HUAWEI INFRINGES THEM, AND
HUAWEI'S CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE**

33.     The Patents-in-Suit were previously owned by MobileMedia Ideas, LLC ("MMI").

34.     Prior to this litigation, MMI attempted to resolve the issues now in this litigation over a period of six years through at least two in-person meetings with Huawei in Shenzen, China and Santa Clara, California; more than 70 emails to Huawei; two sets of claim charts sent to Huawei; and at least three conference calls between MMI and Huawei.

35.     On February 12, 2010 counsel for MMI sent a letter to Mr. Kevin Tao, CEO of Huawei Device Co., Ltd. and Mr. Carl Liu, Executive VP of Huawei North America by Federal Express. Huawei has been aware of several of the Patents-in-Suit no later than that date (including the '114, '390, '239 and RE39,231.)

36.     In addition to identifying these Patents-in-Suit, MMI's February 12, 2010 letter identified the Huawei products and methods that infringe them, including Huawei mobile phones and smartphones, including several specific Huawei smartphone models available at that time.

37.     Huawei did not respond.

38.     After several emails from MMI, MMI and Huawei conducted a conference call in September 2011.

39.     On October 4, 2011, MMI followed up with Huawei by email, stating: "Follow-up to our telephone call last week, we would like to let you know that the possible prior arts cited in our reexaminations are publicly available and can be found in the USPTO PAIR (Patent Application Information Retrieval; http://portal.uspto.gov/external/portal/pair) websites. Patent

Numbers and corresponding Control Numbers (below) can be used for searching the relevant documents."

40.     After nine more follow-up emails, MMI discussed patent licensing by phone on Friday November 4, 2011.

41.     On March 30, 2012, MMI provided Huawei (Wenyu Zhou) additional claim charts.

42.     After MMI followed-up with Huawei through two more emails, on July 25, 2012, Huawei indicated as follows: "I noticed that MMI is going to have a claim construction hearing soon. My understanding is that after the claim construction, things will be much clear regarding MMI's patents, and it will help Huawei's patent analysis a lot. Do you have a idea when we can expect to see the claim construction order?"

43.     MMI responded by email: "I expect that we will be able to get the claim construction ruling with the next few weeks. While we will be happy to discuss further with Huawei after the ruling, I don't think it should delay our discussion. As you are aware, MMI owns more than 100 patent families and patents in suit are only a small portion of MMI's patent portfolio. I note also that we have been communicating with Huawei for more than two years regarding this matter, so I think you would agree that Huawei had more than adequate time to complete its analysis. Therefore, we look forward to moving forward with the discussions. Please let me know how you would like to proceed."

44.     On August 6, 2012, Huawei responded by email as follows: "I believe we have the understanding to have our discussion based on claim charts. After our discussion on acquisition last year, you only sent 15 updated claim charts to us this March, and among those claim charts, 13 of them are currently used in litigation. I don't think our claim charts discussion

without referring to litigation progress, especially the claim construction progress, will be efficient. Please send us any claim construction materials that you currently have, and that you believe will help us understand scope of the patent claims."

45.    MMI then responded by email as follows: "There must be some misunderstanding because during our first face-to-face meeting on 18 November 2010, we did provide Huawei with claim charts for selected MMI patents. For your easy reference, I have attached the previous communication including the claim charts. As mentioned previously, the patents in suit are only a small portion of MMI's patent portfolio, and given that Huawei has now had more than enough time to review our patents, claim construction rulings should not further delay our discussion. Meanwhile, the status of the litigations against Apple, HTC and RIM, along with information regarding the patents in suit can be found in PACER (Public Access to Court Electronic Records; http://www.pacer.gov)."

46.    On August 20, 2012 Huawei responded by email: "I agree there must be some misunderstanding. My understanding is that the claim charts you sent to us in 2010 is somewhat irrelevant and we are going to discuss claim charts that you sent to us this year. Please let us know your thoughts. Besides, I have recently moved back to Shenzhen, China, and will involve less in licensing matters. For the Huawei-MMI licensing discussion, my colleague Haitsing Li, who's copied on this email, will be the point of contact going forward."

47.    After MMI then followed-up with Haitsing Li at Huawei through three more emails, Haitsing Li responded on November 30, 2012: "Discussed with our team, I have arranged with our team to review the claim charts you sent to us. Considering the our schedule, I prefer to arrange a conference call with you in the end of December of 2012 or later."

48.     After MMI then followed-up with Haitsing Li at Huawei through three more emails, on January 13, 2013 Huawei responded: "Our team are analyzing the three patents and we hope to get some help from you. As you knew, some claims against Apple are different from the claims against Huawei, so could you revise your claim charts or at least provide any documents related to claim construction on the disputed claim terms with Apple? Regarding your trip during March, I look forward to seeing you when you are in China."

49.     MMI then responded by email as follows: "At this point, we have been communicating with Huawei for almost three years regarding this matter, so I think you would agree that Huawei has had more than adequate time to complete its analysis.  Therefore, we would like to now move forward with the discussion of the business terms.  That being the case, we respectfully ask that you please also invite to our meeting the relevant Huawei staff who are responsible for discussing the business terms of a license agreement with MMI. Meanwhile, our tentative schedule is to be in Asia during the week beginning 11 March.  Therefore, please suggest a few dates during that week and we will arrange our schedule to visit you."

50.     After an additional follow-up email from MMI, Huawei responded by email: "I checked my schedule and I won't be available on March 13rd,2013 because  I will have a three-day meeting between March 13-15 in Shanghai.  So, could you postpone the meeting for a few days?"

51.     After two additional follow-up emails from MMI, on March 29, 2013, Huawei responded: "I'm glad to have the change to meet you in the near future. And discussed with our team, we are available in early May. Besides, in order to facilitate exchange, we expect to get the updated claim charts based on the examination of the TBD 3 patents ('078, '0750, '068)."

52.     On April 2, 2013, MMI provided Huawei with illustrative claim charts for the MMI patents, including claim charts for the '390 Patent, the '239 Patent and RE 39,231.

53.     MMI then followed up by email at least five more times and MMI called Huawei on June 6, 2013 in hopes of arranging an in-person meeting.

54.     After several more emails, MMI then traveled to Huawei's offices in Shenzen China on June 20, 2013 and met with Huawei there.

55.     MMI then followed-up with Huawei through three additional emails.

56.     After at least 20 more emails, MMI and Huawei agreed to meet again in Santa Clara, California on May 13, 2014.

57.     After six more follow-up emails from MMI, MMI and Huawei then spoke by phone on July 1, 2014.

58.     After five more follow-up emails from MMI, on August 24, 2014, Huawei provided U.S. sales data for two quarters (Q1 and Q2) in 2014.

59.     MMI then followed-up with Huawei in at least four more emails.

60.     Huawei never raised any non-infringement defense related to any of the Patents-in-Suit.

61.     Huawei never raised any prior art issue related to any of the Patents-in-Suit.

62.     Huawei has not agreed to enter into a licensing agreement with MMI or Ironworks.

63.     Huawei has not provided MMI or Ironworks any licensing proposal.

64.     Huawei has not provided any licensing or settlement offer.

65.     Huawei never entered any NDA with MMI or Ironworks.

66.     This Complaint serves as additional notice to Huawei of the Patents-in-Suit and

the manner in which they are infringed.

67.     Despite knowledge of the Patents-in-Suit and knowledge of the manner in which

the Patents-in-Suit are infringed as demonstrated in the provided claim charts, Huawei has

continued to infringe, and induce the infringement of, the Patents-in-Suit.

## COUNT I: INFRINGEMENT OF PAT. RE39,231 CLAIM 12

68.     Ironworks reasserts and realleges paragraphs 1 through 67 of this Complaint as

though set forth fully here.

69.     Claim 12 of the '231 Patent provides:

| Preamble to Claim 12 | A communication terminal for informing a user of a received call from a remote caller by an alert sound, comprising: |
|---|---|
| Element A | an alert sound generator for generating the alert sound when the call is received from the remote caller; |
| Element B | control means for controlling said alert sound generator; and |
| Element C | means for specifying a predetermined operation by the user, wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator to change a volume of the generated alert sound only for the received call, without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, of the call to the terminal from the remote caller unchanged, |
| Element D | further comprising: RF signal processing means for transmitting and/or receiving radio waves; and an antenna for transmitting and/or receiving said radio waves, wherein said call ringing state between said apparatus and said remote caller is established by said transmitted and/ or received radio waves. |

70.     Huawei makes, uses, sells, offers for sale, and imports wireless mobile devices,

including mobile smartphones that are communication terminals for informing a user of a

received call from a remote caller by an alert sound ("Accused Polite Ignore Huawei

Smartphones").  The Accused Polite Ignore Huawei Smartphones include, for example, at least the Huawei Ascend P7, Ascend P6, Ascend Mate 2, P8 Lite, and SnapTo.

71.     Huawei has and continues to make, use, sell, import, and/or offer for sale the Accused Polite Ignore Huawei Smartphones that meet each and every element of claim 12 of the '231 Patent.

72.     Accused Polite Ignore Huawei Smartphones are communication terminals that inform a user of a received call from a remote caller by an alert sound (e.g., an incoming call alert).

73.     Accused Polite Ignore Huawei Smartphones include an alert sound generator (e.g., a loudspeaker assembly) for generating the alert sound when the call is received from the remote caller.

74.     Accused Polite Ignore Huawei Smartphones include control means (e.g., a volume key) for controlling the alert sound generator (e.g., silencing a call alert).

75.     Accused Polite Ignore Huawei Smartphones include means for specifying a predetermined operation by the user (e.g., pressing the volume key, flipping the phone, picking up the phone).

76.     When the Accused Polite Ignore Huawei Smartphone alert sound generator is generating the ringtone and the volume button is pressed by the user or the phone is flipped by the user, the control means controls the alert sound generator to change a volume of the generated ringtone (e.g., silence or reduce the ring volume) only for the received call.

77.     The ringtone is silenced for the incoming call without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, unchanged.

78.     Accused Polite Ignore Huawei Smartphones include RF signal processing means for transmitting and/or receiving radio waves and an antenna for transmitting and/or receiving said radio waves.

79.     The call ringing state between the Accused Polite Ignore Huawei Smartphone and the remote caller is established by the transmitted and/ or received radio waves.

80.     Direct infringement of claim 12 occurs when Huawei makes, imports, uses, sells and offers for sale the Accused Polite Ignore Huawei Smartphones that meet claim 12 of the '231 Patent.

81.     Huawei had knowledge of the '231 Patent since February 12, 2010 and allegations of how the Accused Polite Ignore Huawei Smartphones infringe claims of the '231 Patent since at least April 2, 2013.

82.     Huawei makes, uses, offers to sell, sells, and/or imports the Accused Polite Ignore Huawei Smartphones knowing that the Accused Polite Ignore Huawei Smartphones infringe claim 12 of the '231 Patent.

**COUNT II: INFRINGEMENT OF PAT. RE39,231 CLAIM 2**

83.     Ironworks reasserts and realleges paragraphs 1 through 82 of this Complaint as though set forth fully here.

84.     Claim 2 of the '231 Patent provides:

| Element A | The communication terminal according to claim 12, wherein said control means controls the state of said alert sound generator to stop the sound. |
|---|---|

85.     Huawei has and continues to make, use, sell, import, and/or offer for sale the Accused Polite Ignore Huawei Smartphones that meet each and every element of claim 2 of the '231 Patent.

86.     Accused Polite Ignore Huawei Smartphones include control means that control the state of the alert sound generator to stop the sound (e.g., silence the alert, mute sounds).

87.     Direct infringement of claim 2 occurs when Huawei makes, imports, uses, sells and offers for sale the Accused Polite Ignore Huawei Smartphones that meet claim 2 of the '231 Patent.

88.     Huawei had knowledge of the '231 Patent since February 12, 2010 and allegations of how the Accused Polite Ignore Huawei Smartphones infringe claims of the '231 Patent since at least April 2, 2013.

89.     Huawei makes, uses, offers to sell, sells, and/or imports the Accused Polite Ignore Huawei Smartphones knowing that the Accused Polite Ignore Huawei Smartphones infringe claim 2 of the '231 Patent.

## COUNT III: INFRINGEMENT OF PAT. 6,006,114 CLAIM 1

90.     Ironworks reasserts and realleges paragraphs 1 through 89 of this Complaint as though set forth fully here.

91.     Claim 1 of the '114 Patent provides:

| Preamble to Claim 1 | A method for decreasing the level of a user-perceptible alerting indicator of a radiotelephone, comprising the steps of: |
|---|---|
| Element A | receiving, at the radiotelephone, a signal indicating an incoming call; |
| Element B | in response to the radiotelephone receiving the signal indicating the incoming call, generating the alerting indicator to notify a user of the incoming call; |
| Element C | operating a user interface for inputting information to a controller of the radiotelephone, the information specifying that the level of the alerting indicator be reduced; and |
| Element D | in response to the inputted information, variably reducing the level of the alerting indicator while the incoming call is being received by the radiotelephone. |

92.     Huawei has and continues to make, use, sell, import, and/or offer for sale the Accused Polite Ignore Huawei Smartphones that meet each and every element of claim 1 of the '114 Patent.

93.     Accused Polite Ignore Huawei Smartphones perform a method for decreasing the volume of a ringtone of the phone.

94.     Accused Polite Ignore Huawei Smartphones receive a signal indicating an incoming call and, in response to the signal, generate the ringtone to notify a user of the incoming call.

95.     Accused Polite Ignore Huawei Smartphones operate a user interface for inputting information to its controller, the information specifying that the volume of the ringtone be reduced.

96.     In response to the inputted information, Accused Polite Ignore Huawei Smartphones variably reduce the volume of the ringtone while the incoming call is being received.

16

97.     Huawei had knowledge of the '114 Patent since February 12, 2010.

98.     Huawei infringes claim 1 of the '114 patent by using the Accused Polite Ignore Huawei Smartphones directly, including in relation to product testing.

99.     In the alternative, Huawei induces infringement of claim 1 of the '114 patent by end users including by distributing the Accused Polite Ignore Huawei Smartphones that practice the claimed process in ordinary use.

100.    Huawei makes, uses, offers to sell, sells, and/or imports the Accused Polite Ignore Huawei Smartphones knowing that Huawei's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 1 of the '114 patent. Huawei actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '114 patent under 35 U.S.C. § 271(b).

101.    Huawei has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '114 patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. Huawei's inducement includes, for example, encouraging customers to turn on and use the Accused Polite Ignore Huawei Smartphones by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 1 of the '114 Patent by using the Accused Polite Ignore Huawei Smartphones' features that are used, and benefits that are achieved through claim 1 of the '114 Patent.

## COUNT IV: INFRINGEMENT OF PAT. 5,915,239 CLAIM 10

102.    Ironworks reasserts and realleges paragraphs 1 through 101 of this Complaint as though set forth fully here.

103.    Claim 10 of the '239 Patent provides:

| Preamble to Claim 10 | A voice controlled device comprising: |
|---|---|
| Element A | means for storing telephone numbers to be selected, |
| Element B | means for storing at least one identifier for each telephone number to be selected, |
| Element C | means for receiving an identifier given in a voice form, |
| Element D | means for interpreting received voice commands, |
| Element E | means for selecting a telephone number in response to a voice command, |
| Element F | wherein the identifier comprises several sub-identifiers, and the voice controlled device comprises means for storing the sub-identifiers, and means for selecting a telephone number in response to a voice command comprising a combination of several sub-identifiers. |

104.    Huawei makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile smartphones that are voice controlled devices ("Accused Voice Controlled Huawei Smartphones").  The Accused Voice Controlled Huawei Smartphones include, for example, at least the Huawei Honor 8 and Mate 9.

105.    Huawei has and continues to make, use, sell, import, and/or offer for sale the Accused Voice Controlled Huawei Smartphones that meet each and every element of claim 10 of the '239 Patent.

106.    Accused Voice Controlled Huawei Smartphones are voice-controlled devices via built in software.

107.    Accused Voice Controlled Huawei Smartphones include means (e.g., memory and a contact list) for storing telephone numbers to be selected and identifiers (e.g., names, titles) for each telephone number to be selected.

108.    Accused Voice Controlled Huawei Smartphones include means (e.g., a microphone) for receiving an identifier (e.g., a contact name) given in a voice form.

109.    Accused Voice Controlled Huawei Smartphones include means (e.g., a processor and Voice Mate and/or Google Now software) for interpreting received voice commands and selecting a telephone number in response to a voice command.

110.    The identifier (e.g., contact name) comprises several sub-identifiers (e.g., first and last names, title).

111.    Accused Voice Controlled Huawei Smartphones include means for storing the sub-identifiers, and means for selecting a telephone number in response to a voice command (e.g., "call John Doe Traveler") comprising a combination of several sub-identifiers (e.g., "John," "Doe," and "Traveler").

112.    Direct infringement of claim 10 occurs when Huawei makes, imports, uses, sells and offers for sale the Accused Voice Controlled Huawei Smartphones that meet claim 10 of the '239 Patent.

113.    Huawei had knowledge of the '239 Patent since February 12, 2010 and allegations of how the Accused Voice Controlled Huawei Smartphones infringe claim 10 of the '239 Patent since at least April 2, 2013.

114.    Huawei makes, uses, offers to sell, sells, and/or imports the Accused Voice Controlled Huawei Smartphones knowing that the Accused Voice Controlled Huawei Smartphones infringe claim 10 of the '239 Patent.

## COUNT V: INFRINGEMENT OF PAT. 6,002,390 CLAIM 18

115.    Ironworks reasserts and realleges paragraphs 1 through 114 of this Complaint as though set forth fully here.

116.    Claim 18 of the '390 Patent provides:

| Preamble to Claim 18 | A text input method comprising: |
|---|---|
| Element A | a display step of displaying a virtual keyboard having at least a plurality of keys for character input; |
| Element B | an input step of pointing at least each key on the virtual keyboard to perform key input by the virtual keyboard; and |
| Element C | a retrieval step of retrieving a plurality of candidate words from a dictionary storing a plurality of candidate words and a plurality of exemplary phrases, using the key input performed from the virtual keyboard at the input step as a retrieval condition; |
| Element D | the retrieval condition and the candidate words being dynamically changed in accordance with a change in a key input operation state of the virtual keyboard at the input step. |

117.    Huawei makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile smartphones that perform a text input method ("Accused Predictive Text Huawei Smartphones").  The Accused Predictive Text Huawei Smartphones include, for example, at least the Huawei Honor 8 and Mate 9.

118.    Huawei has and continues to make, use, sell, import, and/or offer for sale the Accused Predictive Text Huawei Smartphones that meet each and every element of claim 18 of the '390 Patent.

119.    Accused Predictive Text Huawei Smartphones enable performance of a text input method.

120.    Accused Predictive Text Huawei Smartphones display a virtual keyboard having at least a plurality of keys for character input.

121.    Accused Predictive Text Huawei Smartphone users point to at least each key on

the virtual keyboard to perform key input by the virtual keyboard.

122.    Accused Predictive Text Huawei Smartphones retrieve a plurality of candidate words from a dictionary storing a plurality of candidate words and a plurality of exemplary phrases, using the key input performed from the virtual keyboard at the input step as a retrieval condition.

123.    The retrieval condition and the candidate words are dynamically changed in accordance with a change in a key input operation state of the virtual keyboard at the input step.

124.    Huawei had knowledge of the '390 Patent since February 12, 2010 and allegations of how the Accused Predictive Text Huawei Smartphones infringe claims of the '390 Patent since at least April 2, 2013.

125.    Huawei infringes claim 18 of the '390 patent by using the Accused Predictive Text Huawei Smartphones directly, including in relation to product testing.

126.    In the alternative, Huawei induces infringement of claim 18 of the '390 patent by end users including by distributing the Accused Predictive Text Huawei Smartphones that practice the claimed process in ordinary use.

127.    Huawei makes, uses, offers to sell, sells, and/or imports the Accused Predictive Text Huawei Smartphones knowing that Huawei's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 18 of the '390 patent.  Huawei actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 18 of the '390 patent under 35 U.S.C. § 271(b).

128.    Huawei has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 18 of the '390 patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. Huawei's

inducement includes, for example, encouraging customers to turn on and use the Accused Predictive Text Huawei Smartphones by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 18 of the '390 patent by using the Accused Predictive Text Huawei Smartphones' features that are used, and benefits that are achieved through claim 18 of the '390 Patent.

## COUNT VI: INFRINGEMENT OF PAT. 9,521,269 CLAIM 1

129.    Ironworks reasserts and realleges paragraphs 1 through 128 of this Complaint as though set forth fully here.

130.    Claim 1 of the '269 Patent provides:

| Preamble to Claim 1 | A mobile station comprising: |
|---|---|
| Element A | a user interface configured to enable a user to control operation of the mobile station by manual input and to obtain information on the operation of the mobile station, |
| Element B | a tactile alert device configured to generate a tactile vibration, and |
| Element C | a control circuit configured to control the tactile alert device to generate a first tactile vibration with a first pattern in response to a first event and a second tactile vibration with a second pattern that is distinctly humanly perceptibly different from the first pattern in response to a second event different from the first event, |
| Element D | wherein the first event is correct user manual input. |

131.    Huawei makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile smartphones that are mobile stations ("Accused Fingerprint Scanning Huawei Smartphones").  The Accused Fingerprint Scanning Huawei Smartphones include, for example, at least the Huawei Honor 8 and Mate 9.

132.    Huawei has and continues to make, use, sell, import, and/or offer for sale the Accused Fingerprint Scanning Huawei Smartphones that meet each and every element of claim 1 of the '269 Patent.

133.    Accused Fingerprint Scanning Huawei Smartphones are mobile stations.

134.    Accused Fingerprint Scanning Huawei Smartphones include a user interface configured to enable a user to control operation of the mobile station by manual input and to obtain information on the operation of the mobile station.

135.    Accused Fingerprint Scanning Huawei Smartphones include a tactile alert device (e.g., a vibration motor) configured to generate a tactile vibration.

136.    Accused Fingerprint Scanning Huawei Smartphones include a control circuit configured to control the tactile alert device to generate a first tactile vibration with a first pattern in response to a first event (e.g., a successful fingerprint scan) and a second tactile vibration with a second pattern that is distinctly humanly perceptibly different from the first pattern in response to a second event (e.g., an incoming phone call) different from the first event.

137.    The first event is correct user manual input (e.g., a successful fingerprint scan).

138.    Direct infringement of claim 1 occurs when Huawei makes, imports, uses, sells and offers for sale the Accused Fingerprint Scanning Huawei Smartphones that meet claim 1 of the '269 Patent.

139.    Huawei has had knowledge of the '269 Patent and allegations of how the Accused Predictive Text Huawei Smartphones infringe claims of the '269 Patent since at least July 6, 2017.

**WILLFUL INFRINGEMENT**

140.    Huawei has infringed and continues to infringe the above identified claims of

each of the Patents-in-Suit despite its knowledge of the '114, '239, and '390 Patents and RE39,231 at least as early as February 12, 2010; specific knowledge of how Huawei's accused systems/methods infringe the '390 Patent, the '239 Patent, and RE39,231 since April 2, 2013; additional specific knowledge of how its accused systems/methods infringe RE39,231 on July 6, 2017; and knowledge of the '269 Patent since at least July 6, 2017, and the objectively high likelihood that its actions constitute patent infringement.

141.    Huawei's infringement of the Patents-in-Suit is willful and deliberate and its actions constitute egregious misconduct, including refusing to take a license, refusing to negotiate in good faith, and having knowledge of the patents-in-suit and notice of the infringement but having no reasonable factual basis for non-infringement or invalidity (e.g., as alleged in paragraphs 33-67 above).  This willful misconduct by Huawei entitles Ironworks to enhanced damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

## JURY DEMAND

Ironworks demands a trial by jury on all issues that may be so tried.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ironworks requests that this Court enter judgment in its favor and against Defendants Huawei Technologies Co. Ltd. Huawei Device USA, Defendant Huawei Technologies USA Inc. as follows:

A.    Adjudging, finding, and declaring that Huawei has infringed the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B.     Awarding the past and future damages arising out of Huawei's infringement of the Patents-in-Suit to Ironworks in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C.     Adjudging, finding, and declaring that Huawei's infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D.     Adjudging, finding, and declaring that the Patents-in-Suit are valid and enforceable;

E.     Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F.     Granting Ironworks such other further relief as is just and proper, or as the Court deems appropriate.

Respectfully submitted,

July 27, 2017

/s/ Alison Aubry Richards
Alison Aubry Richards
IL Bar # 6285669 (*also admitted in ED Texas*)
arichards@giplg.com
David Berten
IL Bar # 6200898
dberten@giplg.com
Hannah Sadler
IL Bar # 6321429
hsadler@giplg.com
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500

*Attorneys for Plaintiff*
*Ironworks Patents, LLC*